UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-cv-01718-SEB-DML |
| | ) | |
| MEDICAL AUTOMATION SYSTEMS, INC., | ) | |
| GREGORY A. MENKE, and | ) | |
| KURT M. WASSENAAR, | ) | |
| | ) | |
| Defendants. | ) | |

# Order on Motion for Expedited Discovery

This matter came before the court on the motion (Dkt. 10) by plaintiff Roche Diagnostics Corporation ("Roche") for expedited discovery. Consistent with the discussion that follows, that motion is GRANTED IN PART AND DENIED IN PART.

**General Factual Background**

Roche filed this suit on December 28, 2010 against Medical Automation Systems, Inc. ("MAS") and two shareholders of MAS who own a majority of MAS's shares, Messrs. Kurt M. Wassenaar and Gregory A. Menke.[1] Roche and MAS had been business partners for many years. With Roche's financial assistance, MAS developed a "RALS" software technology that Roche uses in conjunction with Roche's blood glucose point-of-care devices sold in the medical device industry. In 2006, Roche and MAS entered into a Co-Marketing Agreement to govern their business relationship.

---

[1] Mr. Wassenaar is represented by the same counsel that represents MAS. No one has appeared for Mr. Menke and the court does not know whether he has been served with a summons and the complaint.

Section 13.2 of the Co-Marketing Agreement gives Roche a right of first refusal ("ROFR") to match any offers received by MAS (or Messrs. Wassenaar and Menke as controlling shareholders) involving the transfer of all or substantially all of MAS's assets to a "Competitor" to Roche or the acquisition of a controlling interest in MAS by a Competitor. MAS terminated the Co-Marketing Agreement effective January 1, 2011, but before doing so, Roche purported to exercise its ROFR based on an "offer" by Alere, Inc. to acquire MAS.

As an exhibit to its opposition to Roche's motion for expedited discovery, MAS filed with the court an October 22, 2010 letter from Alere to MAS. According to MAS, the October 22 letter was Alere's "formalization" of "expressions of interests" it had in acquiring MAS which Alere had earlier communicated to MAS. On October 21 and 22, 2010, MAS told Roche by letters that Alere had expressed an interest in MAS. Based on the contents of MAS's letters, Roche believed an offer had been made by Alere within the meaning of the Co-Marketing Agreement. Roche (within the 60-day period applicable to the ROFR) purported to exercise its ROFR and demanded that MAS and its controlling shareholders act in accordance with that exercise.

MAS's view of its dealings with Alere differs from Roche's. According to MAS, it sent Roche its October 21 and 22, 2010 letters about Alere's "expressions of interest" pursuant to an obligation MAS had to Roche under an Asset Purchase Agreement (the "APA") between Roche and MAS. MAS contends the notice to Roche had nothing to do with any obligation MAS had to Roche under the Co-Marketing Agreement and that Alere's October 22, 2010 letter was not an offer that triggered Roche's ROFR. In a December 23, 2010 letter, MAS advised Roche of its position that Alere had not made an offer, and notified Roche that MAS had elected not to renew the Co-Marketing Agreement, which would therefore expire January 1, 2011. Roche represents

to the court that before MAS filed Alere's October 22, 2010 letter with the court, Roche had never seen the letter. Roche points out that Alere referred to its "indication of interest" as an "offer": "[W]e believe our offer stated in this indication of interest is far superior to the transaction contemplated with Roche [under the APA] on an after tax basis, and should be presented as an alternative to your stockholders."

The APA between MAS and Roche is part of the backdrop of the Co-Marketing Agreement dispute, at least in Roche's view. By implication, MAS agrees that the APA has some relevance to understanding the ROFR dispute; the APA is the reason MAS gave for telling Roche about Alere's "indication of interest" in the first place. Further, Alere's October 22, 2010 letter refers to the transaction contemplated between Roche and MAS, a reference to the APA which was subject to a vote of MAS's shareholders, and Alere asked that MAS present the Alere "offer" to the shareholders as an alternative to the APA. MAS terminated the APA because, according to MAS, its shareholders did not approve the APA transaction with Roche. Roche believes the shareholder vote was manipulated by MAS (and perhaps Alere) as part of an overall plan to deprive Roche of rights to acquire MAS, including rights under the Co-Marketing Agreement.[2]

### Dispute Resolution Procedures Under the Co-Marketing Agreement

Both MAS and Roche have represented to the court that the dispute whether the ROFR was triggered thereby obligating MAS to accept Roche's offer to acquire MAS, is governed by the dispute resolution procedures under Article 10 of the Co-Marketing Agreement. Article 10

---

[2] According to the parties, the APA has a forum-selection clause requiring litigation for breach of that agreement to be brought in New York. On December 28, 2010 (the same day Roche filed suit in this court), Roche filed suit against MAS in New York for breach of the APA and specific performance of that agreement. Thus, Roach believes it has two avenues by which it has the right to acquire MAS—alleged breach of the APA and alleged breach of the Co-Marketing Agreement.

3

provides for arbitration of a dispute if the parties are unable to resolve their dispute through mediation.  MAS advised the magistrate judge during a telephone status conference on January 4, 2011, that the dispute whether Roche's ROFR was triggered is subject to the mediation/arbitration provisions of the Co-Marketing Agreement and that those procedures have been invoked.  MAS's opposition to Roche's motion for expedited discovery similarly states that "the parties are bound by an expansive and detailed arbitration clause which is the 'sole and exclusive' procedure for adjudication of the dispute as to the ROFR."  (Dkt. 23 at p. 2). *See also* Roche's reply brief in support of motion for expedited discovery (Dkt. 26) at 1 ("Roche contends it exercised a right of first refusal . . . by matching an October 22, 2010, offer from Alere.  MAS disagrees.  This dispute must be resolved in arbitration").

Article 10 provides that its dispute resolution procedures are exclusive, except "that a party may seek a preliminary injunction or other preliminary judicial relief in the United States District Court in the Southern District of Indiana without the necessity of posting a bond if in its judgment such action is necessary to avoid irreparable damage.  Despite such action the parties will continue to participate in good faith in the procedures specified in this Article 10."  (Dkt. 23-3).  In this case, Roche seeks injunctive relief that preserves its ability to acquire MAS if Roche is successful in the arbitration and obtains an arbitration award that Roche's ROFR was triggered and properly exercised by Roche, thus obligating MAS to accept Roche's offer.

According to MAS, on January 11, 2011, MAS and Alere entered into a "definitive agreement" by which Alere will acquire MAS.  MAS and Alere apparently wish to close the acquisition immediately and intend to do so, absent an order from this court enjoining the closing.  Upon learning that MAS and Alere had signed a contract, Roche moved for a temporary restraining order.  The court held a telephonic hearing on Roche's motion for TRO on January

4

11, 2011,[3] and a second hearing on the TRO has been set for January 19, 2011. Although the court has not yet set a hearing on Roche's motion for preliminary injunction, it will do so following the ruling on Roche's motion for TRO.

**Expedited Discovery**

Under Fed. R. Civ. P. 26(d), a party generally is not allowed to seek any discovery from any source until the litigating parties conduct their Rule 26(f) discovery plan conference. The court may order otherwise. *Id.* Many courts require a party seeking discovery outside the normal timeframes to establish good cause for expediting discovery. *See, e.g., Qwest Communications Internat'l, Inc. v. WorldQuest Networks, Inc.,* 213 F.R.D. 418, 419 (D. Colo. 2003). A pending request for a preliminary injunction is a typical ground that satisfies a good cause standard. *Id.* But as in all cases, deciding whether to permit expedited discovery and the scope of any expedited discovery depends on the facts and circumstances of the particular matter, and a demonstration why the requested discovery, on an expedited basis, is appropriate for the fair adjudication of issues before the court. *See, e.g., Share Corp. v. Momar, Inc.,* 2010 WL 724321 at *2 (E.D. Wis. Feb. 26, 2010) (quoting *Edgenet, Inc. v. Home Depot U.S.A., Inc.,* 259 F.R.D. 385, 387 (E.D. Wis. 2009) (in deciding whether to grant expedited discovery, court assesses the need for the discovery against its burden to the responding party based on the "'entirety of the record to date and the reasonableness of the request in light of the surrounding circumstances'"); *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.,* 1998 WL 404820 at *2 (E.D. Pa. July 15, 1998) (denying request for expedited discovery when the discovery requests were not "reasonably tailored" to the time constraints for taking the

---

[3] Following the telephonic hearing on January 11, the court did issue an order with the agreement and consent of counsel for MAS that, among other things, prevents MAS from closing a transaction with Alere. (Dkt. 29)

discovery prior to the preliminary injunction hearing or the "specific issues that will be determined at the preliminary injunction hearing").

Roche and MAS have taken "all-or-nothing" approaches to expedited discovery. Roche contends its discovery requests--responses to which arguably would satisfy virtually all discovery needs Roche could have in this case, the arbitration, and the New York case[4]—are appropriately "narrowly tailored" and thus should be allowed on an expedited basis. MAS calls them so overbroad that all expedited discovery should be denied. *See Philadelphia Newspapers,* 1998 WL 404820 at *2 (E.D. Pa. July 15, 1988) (expedited discovery should be ordered when it would help the court judge the parties' interests and the chances for success on the merits at the preliminary injunction hearing, but if the requests are not "narrowly tailored" with reasonable boundaries, expedited discovery should be denied). MAS also makes a broadbrush argument that expedited discovery going to the merits of a plaintiff's claim should not be permitted in the preliminary injunction context. (Dkt. 23 at 10 and 14).

Though the court rejects the notion that merits discovery is off limits, the nature of the merits inquiry in the preliminary injunction context is key to setting appropriate limits on expedited discovery. Roche states that to obtain a preliminary injunction from this court, it will need to demonstrate that it has more than a negligible chance of winning on the merits of its claim that it properly exercised its ROFR by matching an offer made by Alere to acquire MAS. (Dkt. 26 at pp. 4-5). Though Roche did not cite a case, likely Roche was referring to the usual preliminary injunction factors and the requirement that a party seeking injunctive relief must show a "likelihood of success on the merits" of its substantive claim; and the greater its chances of succeeding on the merits, the less strong a showing it must make that the balance of harms is

---

[4] The court expresses no opinion on the appropriate scope of discovery in the arbitration.

6

in its favor. *E.g., Foodcomm Internat'l v. Barry,* 328 F.3d 300, 303 (7th Cir. 2003). MAS does not disagree that Roche must make some merits showing at the preliminary injunction hearing; it asserts, however, that Roche already has "the universe of documentation and correspondence relevant to the ROFR issue," which MAS defines as four documents—the Co-Marketing Agreement, Roche's ROFR notice, the alleged Alere offer, and MAS's letter response to Roche's ROFR notice. (Dkt. 23 at p. 2).

The court finds that in the Seventh Circuit, the "likelihood of success on the merits" prong of the preliminary injunction standard is far less demanding when a party is, as here, seeking an injunction *in aid of arbitration*, rather than one to preserve the status quo pending the *court's* final determination of the merits. In *Local Lodge No. 1266 v. Panoramic Corp.,* 668 F.2d 276 (7th Cir. 1981), the Seventh Circuit affirmed the district court's injunction preventing a company from completing the sale of one of its business divisions pending an arbitrator's decision on whether the sale violated the provisions of a contract (there, a collective bargaining agreement). The Seventh Circuit found that if the district court had not issued the status quo injunction, the arbitral process would have been unfairly frustrated because the plaintiff would be denied an effective remedy if the arbitrator decided the contract issue in its favor. *Id.* at 277. 282-83.

The Seventh Circuit then addressed the factors for obtaining injunctive relief in aid of arbitration, found that "likelihood of success on the merits" is a factor, but also ruled that this standard *does not require the plaintiff to show that he has a likelihood of prevailing on the merits at the arbitration stage*. *Id.* at 284 ("We decline to follow these cases" requiring a likelihood of success "in obtaining the award in aid of which the injunction is sought"). Rather, the plaintiff must show only that "the position he will espouse in arbitration is sufficiently sound to prevent

7

the arbitration from being a futile endeavor," or that there is a "genuine dispute" with respect to an arbitrable issue, which may be satisfied by a showing that the plaintiff's position "is not frivolous." *Id.* at 284-85. The court adopted this low-threshold "likelihood of success" merits standard to ensure that a district court does not pre-judge the merits of the very dispute subject to arbitration, but rather focuses its inquiry on whether an injunction is necessary to preserve an effective arbitral remedy. *Id.* at 285 (the district judge's inquiry "properly was confined to the question whether [the defendant's action to complete the sale of one of its divisions] would frustrate the arbitral process and whether the equitable principles of irreparable injury and a balance of hardships supported an award of relief"). This concern that courts cabin their role and not trample on decisions that parties agreed were ones an arbitrator would make is espoused frequently by the Seventh Circuit with respect to the arbitration of commercial disputes, and not just in the labor law context, as in *Local Lodge*. *See, e.g., Lumbermens Mut. Casualty Co. v. Broadspire Mgmt. Services, Inc.*, 623 F.3d 476, 481 (7th Cir. 2010); *Hawkins v. Aid Ass'n for Lutherans,* 338 F.3d 801, 807 (7th Cir. 2003).

The court must therefore determine the propriety and scope of the expedited discovery Roche seeks with reference to the burden it will bear at the preliminary injunction hearing. Given the minimal burden on the merits issues, the court finds that the expedited discovery sought by Roche is overbroad in large part and not sufficiently tailored to the issues to be decided at the preliminary injunction hearing. The court will not limit Roche, however, to only those documents that MAS has decided are relevant and is willing to share; MAS's failure to provide Roche with Alere's October 22, 2010 letter before this litigation concerns the court. But MAS may well be right that Roche will not need any more than the four documents it already has to satisfy its burden to prove a non-frivolous, genuine dispute regarding the ROFR.

The court does not agree with MAS that discovery requests that are relevant to the New York case and the APA necessarily are not relevant to the Co-Marketing Agreement and Roche's ROFR. The same discovery can be, and many times is, relevant to more than one dispute. As earlier noted, by implication MAS acknowledges that Roche's and MAS's obligations under the APA are pertinent to evaluating whether Alere's October 22, 2010 letter to MAS was an offer within the meaning of the Co-Marketing Agreement. The potential relationship between the APA, the Alere "offer," and the Co-Marketing Agreement is also evidenced by Alere's letter itself, requesting that MAS communicate its "offer" to MAS's shareholders as an alternative to the MAS/Roche APA. Further, because it appears that Alere's interest in MAS, the execution of the APA and the ensuing shareholder vote, and Roche's purported exercise of its ROFR all occurred in a compressed and overlapping time frame, it may be expected that documents related to the APA dispute may also be pertinent to the Co-Marketing Agreement dispute.

Based on the foregoing analysis, the court GRANTS in part and DENIES in part Roche's motion for expedited discovery, as follows. Roche is entitled to the following discovery from the defendants on an expedited basis:

1. Written responses *and* responsive documents to Roche document request 2: "All documents generated on or after October 12, 2010, mentioning, referring to, or relating to the Shareholder Vote."

2. Written responses *and* responsive documents to Roche document request 4, but modified as follows: "All documents generated on or after August 1, 2010, constituting, referring to, or relating to any communication between, among or to any MAS shareholders (in their capacities as shareholders) relating to Alere."

9

3. Written responses *and* responsive documents to Roche document request 7: "All documents constituting, referring to, or relating to any communication between MAS and Alere on or after August 1, 2010."

4. Written responses *and* responsive documents to Roche document request 16: "All documents generated on or after October 12, 2010, mentioning, referring to, or relating to (a) Section 13.2 of the Co-Marketing Agreement, or (b) Roche's right of first refusal under the Co-Marketing Agreement.

The court also grants Roche the right to take a Rule 30(b)(6) deposition of defendant MAS, but limited to matters fairly within the scope of the document requests for which the court is permitting Roche expedited discovery.

The court denies Roche's motion for expedited discovery in all other respects.

Unless modified by subsequent order,[5] the deadline for MAS to comply with the expedited documents discovery is January 27, 2011, and MAS shall produce its Rule 30(b)(6) designee(s) for deposition on a date to be agreed by the parties, but which shall occur no later than January 31, 2011.

So ORDERED.

Date: 01/14/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

---

[5] This expedited discovery schedule accounts for the fact that, if a temporary restraining order is issued on January 19, the preliminary injunction hearing would be held before the TRO expires.

Distribution:

Daniel K. Burke
HOOVER HULL LLP
dburke@hooverhull.com

Tiffany A Buxton
ALSTON & BIRD
tiffany.buxton@alston.com

John F Cambria
ALSTON & BIRD LLP.
john.cambria@alston.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

Scott E. Murray
BARNES & THORNBURG LLP
smurray@btlaw.com

Michael Rosiello
BARNES & THORNBURG LLP
mike.rosiello@btlaw.com

T. Joseph Wendt
BARNES & THORNBURG LLP
jwendt@btlaw.com