UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ROCHE DIAGNOSTICS CORPORATION, )
)
       Plaintiff, )
)
  vs. )     1:10-cv-1718-SEB-DML
)
MEDICAL AUTOMATION SYSTEMS, )
INC., GREGORY A. MENKE, and KURT )
M. WASSENAAR, )
)
       Defendants. )

**ORDER GRANTING A TEMPORARY RESTRAINING ORDER**
**(Docket Nos. 25, 44, and 58)**

      This matter is before the Court on the Motion for Temporary Restraining Order [Docket No. 25], filed by Plaintiff, Roche Diagnostics Corporation ("Roche"), on January 11, 2011.[1] Roche contends that it exercised its contractually binding right of first refusal to purchase Defendant Medical Automation Systems ("MAS") with which MAS has failed to comply or otherwise honor. Roche requests the entry of a temporary restraining order ("TRO") preventing any of the Defendants, MAS, Kurt M. Wassenaar, and/or Gregory A. Menke, from proceeding with the closing on a proposed merger with Alere, Inc. ("Alere") thereby maintaining the status quo to allow the Court an opportunity to

---

[1] On January 18, 2011, Defendants filed a Motion for Leave to File Surreply [Docket No. 44]. The Court, having considered said motion and having been otherwise duly advised, hereby GRANTS the motion. Defendants' surreply is deemed filed as of the date of this Order.

hear and decide Roche's Motion for Preliminary Injunction.

A hearing on the instant motion was held on January 19, 2011, at which the parties presented documentary evidence and oral argument. Having considered the briefing, documentary evidence, controlling legal authorities, and oral argument, the Court hereby GRANTS Plaintiff's motion.[2]

I.      **Standard of Review**

The grant of injunctive relief is appropriate if the moving party is able to demonstrate: (1) a reasonable likelihood of succeeding on the merits; (2) irreparable harm if preliminary relief is denied; and (3) an inadequate remedy at law. Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc., 549 F.3d 1079, 1086 (7th Cir. 2008). If the moving party fails to demonstrate any one of these three threshold requirements, the emergency relief must be denied. Id. However, if these threshold conditions are met, the Court must then assess the balance of harm – the harm to Plaintiffs if the injunction is not issued against the harm to Defendant if it is issued – and, where appropriate, also determine what effect the granting or denying of the

---

[2] On January 27, 2011, Plaintiff filed its "Submission of Newly-Produced Evidence that Supports its Motion for Temporary Restraining Order" [Docket No. 57]. The next day, on January 28, 2011, Defendants moved to strike the newly-submitted evidence, or, in the alternative, to seal the submission and for leave to file a response [Docket No. 58]. Upon review, we GRANT Defendants' Motion to Seal. It is HEREBY ORDERED that the clerk of court will seal Docket No. 57, including all exhibits. Defendants are granted leave to file their response, also under seal. This evidence has not been considered by the Court in ruling on the pending motion. It will be considered as appropriate in future proceedings. The TRO record was closed prior to the filing of these submissions, and thus, the Court did not consider them.

injunction would have on nonparties (the public interest). Id.

In determining whether to grant injunctive relief, the district court must take into account all four of these factors and then "exercise its discretion 'to arrive at a decision based on the subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." Id. (quoting Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429, 1436 (7th Cir. 1986)). This process involves engaging in what is called the "sliding scale" approach, meaning that "the more likely it is the plaintiff will succeed on the merits, the less balance of irreparable harms need weigh toward its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 12 (7th Cir. 1992). The sliding scale approach "is not mathematical in nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895-96 (7th Cir. 2001) (quoting Abbott Laboratories, 971 F.2d at 12).

## II.  Discussion

### A.  Likelihood of Success on the Merits

The issues and evidence before the Court are significant and complex, reflecting a long-standing business relationship between the parties and detailed contractual agreements. Because the parties have not yet undertaken the expedited discovery they intend to conduct, the merits of their respective sides in this dispute remain undeveloped.

Despite the fact that the evidentiary record is so preliminary, and our need for more factual information regarding the October 2010 communications between Alere and MAS and the extent of MAS's duty to provide notice to Roche under the Co-Marketing Agreement as a result of those communications, we nevertheless find that Plaintiff has at this point established facts sufficient to meet its burden of demonstrating at least some likelihood of success on the merits once expedited discovery is completed.

### B. Inadequate Remedy at Law/Irreparable Harm

We find that a final closing of the proposed MAS/Alere merger poses a threat of immediate harm to Roche because, if and when that deal closes, Alere, a competitor of Roche, will be running the company that was previously MAS thus making business decisions that would substantially impact MAS's operations, both internally and in the marketplace, and threaten its obligation as the exclusive supplier of critical software to Roche. Even if Alere did not make substantial changes in the manner in which MAS operated, as Roche fears, a closing would nevertheless likely cause irreparable damage and disruption to Roche's relationships with its customers who have come to rely on Roche's access to MAS's software for their businesses.

MAS argues that it intends in any event to abide by its obligation set forth in the Co-Marketing Agreement to continue to provide Roche access to the software for a two-year wind down period, and thus, that Roche's customer relationships would not be affected by the completion of the proposed closing. However, as Roche argues, customer goodwill would likely still suffer damage because it would be clear that such forbearance

4

would be, at most, only a short-term deal.  More significantly, because exclusivity is not included as part of the two-year wind down provision, if the closing were allowed to take place, Alere would then be in a position to immediately make licensing decisions, which might include licensees who are Roche's competitors.  None of these harms can be adequately compensated by a monetary payment from MAS.  For these reasons, we find that Roche has demonstrated that, if the Court were to permit the closing of the MAS/Alere deal to occur, substantial irreparable harm to Roche for which there is no adequate remedy at law is threatened.

    **C.**    **Balance of Harms**

As discussed above, Roche has presented convincing evidence that it will likely suffer significant harm in the marketplace and in connection with its customer relationships if injunctive relief does not issue.  MAS, on the other hand, argues that, if the TRO issues, its shareholders will be deprived of the right to sell their shares at a fair price to the company of their choosing and that any delay could compromise or threaten the retirements of MAS's employees.  However, no evidence suggests that the slight delay prompted by the issuance of this TRO will cause MAS's merger with Alere to dissolve or be altered in any manner that would financially harm the shareholders, at least not in any significant way.  Accordingly, we find that any harm suffered by MAS shareholders as a result of being required to wait to finalize the sale of their stock for the brief period of time at issue here does not outweigh the potential harm that would befall Plaintiff if the injunctive relief were not provided.  Thus, with regard to the balance of

5

harms factor, we hold that it clearly weighs in favor of granting a TRO.

   D.   **Public Interest**

The public interest factor weighs also slightly in favor of issuing a TRO. The public has a significant interest in the enforcement of contracts and arbitration agreements. Although it is true, as Defendants argue, that there is a countervailing interest in an open and competitive marketplace, we are not convinced at this very early stage of the proceedings that the proposed injunctive relief is anti-competitive. Thus, we find that the issuance of a TRO in this situation would, at the very least, not be against the public interest.

   E.   **Bond**

The parties have expressly agreed that no security would be required to obtain preliminary relief to prevent irreparable harm (see Co-Marketing Agreement, § 10.5); thus, no bond shall be required to be posted by Plaintiff in this instance.

## III.   Conclusion

For the foregoing reasons, particularly in light of the fact that the evidentiary record at this point is so slim and undeveloped, the Court finds that maintaining the status quo best serves the interests and purposes of equity. Thus, we GRANT Plaintiff's Motion for a Temporary Restraining Order. Defendants, Medical Automation Systems, Inc., Gregory A. Menke, and Kurt M. Wassenaar, are hereby TEMPORARILY RESTRAINED from closing on its proposed merger with Alere, Inc. Such TEMPORARY

RESTRAINING ORDER shall be effective for fourteen (14) days, beginning immediately upon entry of this ruling, subject to extension for good cause. The preliminary injunction hearing is hereby set for February 14, 2011, at 9:30 a.m., in Room 349 (Chief Judge Young's courtroom) of the United States Courthouse in Indianapolis, Indiana.

      IT IS SO ORDERED.

Date: \_\_\_\_01/28/2011_____

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Daniel K. Burke
HOOVER HULL LLP
dburke@hooverhull.com

Tiffany A Buxton
ALSTON & BIRD
tiffany.buxton@alston.com

John F Cambria
ALSTON & BIRD LLP.
john.cambria@alston.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

Casey Cole Kannenberg
BINGHAM MCHALE LLP
ckannenberg@binghammchale.com

Scott E. Murray
BARNES & THORNBURG LLP
smurray@btlaw.com

Michael Rosiello
BARNES & THORNBURG LLP
mike.rosiello@btlaw.com

Wayne C Turner
BINGHAM MCHALE LLP
wturner@binghammchale.com

T. Joseph Wendt
BARNES & THORNBURG LLP
jwendt@btlaw.com